96 F.3d 1448
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Betty HIAR, Plaintiff-Appellant,
v.
Beverly HINGSTON, d/b/a Mackinaw Bargain Barn, and BBJ
Bargains, Inc., Defendant-Appellee
 No. 95-1703.
 United States Court of Appeals, Sixth Circuit.
 Sept. 5, 1996.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 94-10258; Robert H. Cleland, Judge.
 E.D.Mich.
 REVERSED.
 Before: KENNEDY and BOGGS, Circuit Judges; and RUSSELL,* District Judge.
 PER CURIAM.
 
 
 1
 Betty Hiar appeals from the district court's decision to dismiss her suit under the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 201 et seq., without giving her an opportunity to amend her pleadings to meet the Act's jurisdictional requirements. Because we conclude that allowing Hiar to amend her pleadings once more would not significantly prejudice the defendants nor unduly burden the district court, and is generally in the interest of justice as required by Federal Rule of Civil Procedure 15(a), we reverse the decision of the district court and remand the case to give Hiar another chance to amend her pleadings.
 
 
 2
 * The defendant, Beverly Hingston, owns a small, seasonal gift shop in Mackinaw City, Michigan. She befriended the plaintiff, Betty Hiar, when Hiar worked in the shop next to her shop in the summer of 1992. Hiar started to work for Hingston in October 1992. The two also shared a house, starting at about this same point. Hiar explains that the relationship "fizzled" in May 1994. As a result, Hiar moved out of the house. Eventually, friction at work caused Hingston to fire Hiar in June 1994.
 
 
 3
 According to Hiar, she and Hingston worked out a deal whereby Hiar worked on-and-off during the off-season (roughly November through April), but was only paid during the spring and summer when the store was open. This arrangement apparently benefitted both parties, since Hiar could claim unemployment benefits even though she still worked (perhaps an arrangement of questionable legality from the perspective of Michigan's unemployment authorities, but this is not at issue in this appeal), and Hingston could pay Hiar during the "on" season when she had a strong cash-flow.
 
 
 4
 Hiar now claims that she worked numerous hours throughout the winter but was not paid, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. Hiar brought her claim in federal district court based on federal question jurisdiction. Hingston moved to dismiss for failure to state a claim because the complaint failed to plead facts to establish any of the possible jurisdictional prerequisites for application of the Act.[1] The district court dismissed the action without prejudice and allowed Hiar thirty days to amend the complaint to address the jurisdictional prerequisite.
 
 
 5
 Hiar then filed a motion to amend her pleadings that was opposed by Hingston on the ground that it was futile, since even with the amendment, Hiar's pleadings failed to allege the facts needed to bring her within the act's jurisdiction. Hiar's proposed amendment stated that she met the jurisdictional requirements of the FLSA because "Plaintiff and Defendant were engaged in commerce in that Defendant's business involved the following:" (emphasis added) and then went on to list various activities involving buying and selling goods across state lines. The proposed amendment could not have established the type of jurisdictional nexus Hiar hoped to prove because "[i]n determining coverage, it is immaterial whether the employee is hired by one engaged in an interstate business, since it is the activities of the employee and not of the employer which are decisive." Mitchell v. Welcome Wagon, 139 F.Supp 674, 678, (W.D.Tenn.1954), aff'd, 232 F.2d 892 (6th Cir.1956).[2] The district court agreed that the amendment was futile, denied the motion to amend on that basis, and dismissed the case with prejudice. The district court also refused to allow Hiar to amend her complaint upon her later motion for reconsideration. Hiar now appeals to us, asking that we reverse the district court's decision to dismiss her suit with prejudice, thereby allowing her the chance to amend her pleadings to bring them within the ambit of the Act.
 
 II
 
 6
 We review a district court's decision to grant or deny leave to amend pleadings for abuse of discretion. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971); Marks v. Shell Oil Co. 830 F.2d 68, 69 (6th Cir.1987). We have previously held that "[t]hough the decision to grant leave to amend is committed to the trial court's discretion, that discretion is limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." Ibid. Federal Rule of Civil Procedure 15(a) states in relevant part:
 
 
 7
 AMENDMENTS. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, or if the pleading is one to which no responsive pleading is permitted and the action has not yet been placed on the trial calendar, the party may amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given whenever justice so requires. (emphasis added)
 
 
 8
 As we explained in Marks, the discretion of a district court to deny a party the opportunity to amend their pleadings is limited. Although the boundaries of this discretion are not entirely clear, we are confident that Hiar should have been allowed to amend her complaint with a corrected version of her original proposed amendment that presumably would clarify what (if any) interstate activities Hiar personally undertook in Hingston's business.
 
 
 9
 Hiar fits in the category of plaintiffs who, after having been informed of a deficiency in their pleadings by a defendant's dispositive motion, offer an amendment that fails to cure the noted deficiency, yet who clearly wish a "second chance" to amend (in effect, a "third chance" to get their pleadings right). The Supreme Court has contemplated how such situations should be reconciled with Rule 15's "liberal" allowance of amendment:
 
 
 10
 Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See Generally, 3 Moore, Federal Practice (2d ed. 1948), pp 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.
 
 
 11
 Foman v. Davis, 371 U.S. 178, 182 (1962) (emphasis added).
 
 
 12
 In applying this principle, past cases have not left the district courts with much clear guidance as to when one or a combination of the factors mentioned above justifies denying leave to amend. However, we can find none of these factors present in Hiar's case. Although the defendant complains of dilatory practices and the additional discovery burden that allowing Hiar to amend would occasion, we note that the district court did not rely upon or even note any specific prejudice to the defendant that one additional amendment would cause. The proper focus in this analysis is not on the overall burden imposed on a defendant, but upon the additional burden or prejudice that a particular amendment might cause. Although Hingston mentions the burdensome nature of the proceedings to date, she fails to identify any incremental increase in this burden that would accompany Hiar's amendment. Given that it appears that substantial discovery concerning the interstate nature of the store and Hiar's role has already taken place, we fail to see how one more amendment will unduly prejudice Hingston or cause any additional litigation burden--except, of course, in the sense that permitting the amendment might allow a trial rather than a quick end to the matter on Hingston's 12(b)(6) motion.
 
 
 13
 Although prejudice, burden, and delay appear to play no role in this decision, the district court did rely on the futility grounds noted above, but only as to the first, ineffective, amendment. When Hiar proposed the first amendment, which referred only generally to the interstate nature of Hingston's store, at clear odds with Mitchell's directive to focus on the interstate activities of the individual employee, the district court appropriately rejected the amendment as insufficient. This justification, however, does not extend to the larger decision to deny any further amendments by dismissing Hingston's claim with prejudice. When all a plaintiff need do to correct a deficiency is specify which (if any) of the activities related to interstate commerce he or she engaged in, further amendments cannot be denied as futile. Indeed, common sense suggests that it would have been hard for Hiar not to have personally engaged in at least some (if not all) of the interstate activities she recounted in her proposed amendment, given the small size of Hingston's operation. A charitable reading of her proposed amendment would even lead to the conclusion, based on the wording and type of tasks noted, that Hiar meant that she had in fact engaged in all of the activities related to interstate commerce that she noted.
 
 
 14
 Although allowing Hiar a second chance to amend her pleadings does not appear to implicate any undue hardship or prejudice concerns, and further amendments cannot be deemed futile at this stage, Hiar's requested relief does come close to impinging on concerns about repeated, ineffective efforts to amend. The Supreme Court specifically noted that "repeated failure to cure deficiencies by amendments previously allowed," was a possible ground on which to deny the right to make further modifications. Foman, 371 U.S. at 182 (1962). Even in Foman, however, the Supreme Court contemplated something more extreme than Hiar's one defective amendment, since it referred to amendments, rather than a single amendment. Were a district court to consider preventing further amendments on these grounds, we believe the situation would have to involve more than a second amendment, and should probably involve several amendments rendered in a fashion that makes it clear that the plaintiff is essentially floating ideas and letting the defendant do the legal research to refine the plaintiff's legal posture. At some point, this process could be seen as unreasonably prejudicial or burdensome to the defendant, warranting a decision to prevent further amendments. Such is not the case here, even though Hiar has let her opponent guide her to the correct legal principles governing the jurisdictional requirements of the FLSA.
 
 
 15
 We note that Hingston drew our attention to another area in which Hiar's complaint may be so deficient as to warrant dismissal--failure to allege either the precise weeks in which she performed the acts engaging her in commerce, or at least allege the average hours worked per week. We are persuaded that the best course for us to take on these issues is to decline to affirm the decision of the district court on either of these grounds. The district court based its dicision to dismiss Hiar's complaint on lack of jurisdiction, without reaching this issue. Since it was not ruled on by the district court, Hiar has not had a chance to rectify any problem by amendment. We will thus remand the case to the district court without commenting on the merits of this argument, and leave its further disposition to the district court.
 
 
 16
 We therefore REVERSE the decision of the district court dismissing Hiar's claim with prejudice, and REMAND the action so that Hiar is afforded the opportunity to amend her pleadings if she so desires.
 
 
 
 *
 The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 To state a claim under both § 206 and § 207 of the FLSA, a plaintiff must properly allege, among other things, one of the following:
 (a) that plaintiff was engaged in commerce;
 (b) that plaintiff was engaged in the production of goods for commerce; or
 (c) that plaintiff was employed in an enterprise engaged in commerce or in the production of goods for commerce.
 See 29 U.S.C. §§ 206, 207.
 
 
 [2]
 We note, however, that the Mitchell court could only have made the broad statement to the effect that the activities of the employer are irrelevant because the decision was reached before the third jurisdictional ground (see footnote 1, above) concerning those "employed in an enterprise engaged in commerce ..." was added by amendment in 1961. See Fair Labor Standards Amendments of 1961, Pub.L. No. 87-30, §§ 5(b), 6(a), 75 Stat. 65, 67, 69 (1961). The Supreme Court has explained that "[p]rior to the introduction of enterprise coverage in 1961, the only individuals covered under the Act were those engaged directly in interstate commerce or in the production of goods for interstate commerce. Enterprise coverage substantially broadened the scope of the Act to include any employee of an enterprise engaged in interstate commerce, as defined by the Act." Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 295 n. 8 (1985). For such enterprise coverage to apply to an employee or enterprise, the enterprise must, among other attributes, have an "annual gross volume of sales made or business done [of] not less than $500,000...." 29 U.S.C. § 203(s)(1). Hiar nowhere suggests that this is true of Hingston's Bargain Barn, and generally makes it apparent, through the wording of her proposed amendment, that she hopes to qualify under the first of the jurisdictional tests discussed in note 1, above (as an employee who is directly engaged in commerce). The Mitchell decision is thus still viable to the extent that it directs plaintiff's hoping to qualify under either of the first two jurisdictional tests to focus on their own activities specifically, and not those of their employer, generally. It is the failure to heed this still valid understanding of the FSLA that led to Hiar suffering dismissal with prejudice of her suit